**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| EARLENE BRANCH PETERSON, KIMMA GUREL, and MONICA VEILLETTE,<br><br>               Plaintiffs,<br><br>     v.<br><br>WILLIAM P. BARR, in his official capacity as Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex,<br><br>               Defendants. | Case No. 20-cv-00350-JMS-DLP |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO INTERVENE AS PLAINTIFFS</u>

This country is in the grip of a pandemic the likes of which has not been seen for more than a century. The public health crisis before us is not abating; rather it is rapidly deteriorating. While those aged 60 and older are at greatly increased risk of death from COVID-19, no one is immune to its ravages, which may carry permanent loss of lung, kidney, cardiac and neurological function, even when it isn't lethal. So-called "mild" cases often involve fevers that last for weeks, constrained breathing, coughing, loss of smell and taste, extreme fatigue, and excruciating joint pain. No matter their age, individuals with underlying medical conditions — heart disease, hypertension, type-2 diabetes, asthma, obesity—are at increased risk for poor outcomes. Carried and transmitted by those who are asymptomatic and pre-symptomatic, everyone is at risk when they venture from home into environments over which they have no control because there is no way to determine who might be a source of disease.

1

This was (and remains) the state of the nation when Defendants decided, on June 15, 2020, in the midst of this crisis, to set the date of Daniel Lee's execution for July 13, 2020. In choosing that date, Defendants were operating under no deadlines nor any other factor that compelled them to choose that date. They selected it without consulting with Plaintiffs, the very people in whose name they claim to be moving forward[1] and whom they had chosen to serve as the designated witnesses. They selected the date knowing the distances Plaintiffs would have to travel to attend the execution, and knowing that Plaintiffs had planned to attend when it was originally scheduled for December 9, 2020. Even now, Defendants put forth no rationale for fixing July 13, in the middle of a declared national health emergency, as the date of Mr. Lee's execution. Indeed, Defendants' legal arguments fail to match their rhetoric concerning their supposed actions on behalf of victims and their families, asserting that those very same victims and families do not have a sufficient "interest" in the issues presented here.

And by carrying through with it now, they will deprive eighty-one year old Earlene Branch Peterson, proud mother of victim Nancy Ann Mueller, adoring grandmother of victim Sarah Elizabeth Powell, and Kimma Gurel, Nancy's sister, Sarah's aunt, and Monica Veillette,

---

[1] *See, e.g.* "Federal government to resume capital punishment after nearly two decade lapse," The United States Department of Justice Office of Public Affairs, July 25, 2019. ("[W]e owe it to the victims and their families to carry forward the sentence imposed by our justice system." Attorney General William Barr.) (https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse) (last visited July 9, 2020); "Executions scheduled for four federal inmates convicted of murdering children," The United States Department of Justice Office of Public Affairs, June 15, 2020 ("We owe it to the victims … and to the families left behind to carry forward the sentence imposed in our justice system." Attorney General William Barr.) (https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children) (last visited July 9, 2020).

Nancy's niece, Sarah's cousin, of their right and their only opportunity to attend this execution.[2] Because to do so would subject them to potentially deadly peril.

Plaintiffs ask this Court to prevent this violation of the law, and enter a temporary stay to last only so long as travel and entry into a prison remain a serious health risk.

## I.      THE LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must demonstrate that (1) her claims are likely to succeed on the merits; (2) she would likely suffer irreparable harm without the injunction; (3) the "balance of equities" tips in her favor; and (4) the injunction would be "in the public interest." See *Whole Woman's Health All. v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019). Defendants only offer arguments on the first and third factors, thus conceding that Plaintiffs meet the other two.

To meet the threshold showing of a likelihood of success on the merits, "a plaintiff must only show that his chances to succeed on his claims are 'better than negligible.'" *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1036 (S.D. Ind. 2018).  This is a "low threshold," which the Plaintiffs easily meet in this case. *Id.*; *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017). Once that threshold showing is made, the court "must then balance the private and public equities on a sliding scale to determine whether the injunction should issue." *Whole Woman's Health All. v. Hill*, 388 F. Supp. 3d 1010, 1032 (S.D. Ind.), *aff'd as modified*, 937 3.d 864 (7th Cir. 2019). "That is, the more likely it is the plaintiffs will succeed on the merits, the less the balance of irreparable harms need weigh towards their side; the less likely it is the plaintiffs will succeed, the more the

---

[2] Declarations of Earlene Branch Peterson and Monica Veillette are attached to this Reply as Exhibit 1 and Exhibit 2, respectively.

balance need weigh towards their side." *Id.* (internal quotations and alteration omitted). On any scale, the equities favor Plaintiffs. Plaintiffs have a compelling interest both in protecting their health and witnessing the execution.

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs certainly have a "better than negligible" chance of success on the merits. *J.A.W.*, 323 F. Supp. 3d at 1036.  None of Defendants' arguments show otherwise.  *See* Defs' Opp, Doc. 10, p. 10-13 This is not one of "those rare circumstances" where the relevant law "is drawn so that a court would have no meaningful standard against which to the judge the agency's exercise of discretion." *See Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2568 (2019) (internal citation omitted).  Defendants' argument that Plaintiffs are outside of the "zone of interest" are belied by the relevant regulation, 28 C.F.R. § 26.4, and the government's own execution protocol, which specifically addresses victims. Finally, Plaintiffs will be able to successfully show that Defendants' choice of an execution date was "arbitrary and capricious," because of their failure to adequately consider the potentially fatal health risks that their decision imposes on Plaintiffs.  Plaintiffs have a right to be present at Lee's execution, and the Court has sound reason to ensure Defendants do not trample that important right.

### A.     The Government's Decision is Subject to Judicial Review.

The Administrative Procedure Act contains "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986).  While Congress provided an exception for action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), that is "a very narrow exception," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (internal quotation marks omitted). The exception applies only if there is "no law to apply." *Id*. Thus, judicial review is available

where there are 'meaningful standards to cabin the agency's otherwise plenary discretion.'"

*Physicians for Soc. Responsibility v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) (quoting

Drake v. FAA, 291 F.3d 59, 71 (D.C. Cir. 2002)). In addition, "judicially manageable standards

may be found in formal and informal policy statements and regulations as well as in statutes." Id.

(*quoting Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (internal quotation marks and

citation omitted)).

Defendants' contention that they have unfettered and unreviewable discretion in setting

an execution date is incorrect. *See* Defs' Opp at 10-13.  The regulations governing

implementation of federal death sentences show just the opposite. These regulations, on their

face, limit agency discretion and outline clear requirements to which the Government must

adhere in scheduling and carrying out executions. *See, e.g.,* 28 C.F.R. § 26.3(a)(1) (setting of

execution date "shall be no sooner than 60 days from the entry of the judgment of death. If the

date designated for execution passes by reason of a stay of execution, then a new date shall be

designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted.").

Moreover, this decision is not one of those "certain categories of administrative decisions

that courts traditionally have regarded as 'committed to agency discretion.'" *See Dep't of

Commerce,* 139 S.Ct. at 2568; *see also Webster v. Doe*, 486 U.S. 592, 600-601 (1988).  Indeed,

as Defendants themselves point out, courts have historically have played a role in setting

execution dates; and they have recently done so, even after the death sentence implementation

regulations were promulgated. *See* Order Setting Execution Date, *United States v. Garza,* No.

1:97-cv-00273, Dkt. 18 (S.D. Tex. May 26, 2000); *see also United States v. Hammer*, 121 F.

Supp. 2d 794, 796 (M.D. Pa. 2000) (noting court's setting of execution date, and reviewing

claims pertaining to execution implementation). Courts have also, in fact, considered challenges

relating to the regulations, including, specifically, 28 C.F.R. § 26.4. *See, e.g., Entertainment Network, Inc. v. Lappin*, 134 F. Supp. 2d 1002, 1007-11 (S.D. Ind. 2001).  There is no reason why the Court is unable to review the execution date in this case.

>    **B.**      **Plaintiffs Fall Within the Administrative Procedures Act's Zone of Interests.**

Plaintiffs are within the "zone of interests" protected by the regulations governing the date of executions. As the Seventh Circuit recently pointed out, the "zone-of-interests test is not 'especially demanding' in the APA context." *Cook Cty., Illinois v. Wolf*, 962 F.3d 208, 215 (7th Cir. 2020).  Because "The plaintiffs' interests must only *arguably* fall within the zone of interests of the statute." *Id.*  In the APA context, the Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 225 (2012).  "Suit is foreclosed 'only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'"  *Cook County*, 962 F.3d at 215.

Despite repeatedly stating that it was pursuing the execution of Mr, Lee on behalf of crime victims and their families (which include Plaintiffs), the government now argues that those victims have no interest in the matter.  But Plaintiffs are not outside meddlers.  They have a recognized interest in both the criminal proceedings against Mr. Lee[3] as well as the execution of his sentence.

Plaintiffs have already been selected to attend this execution, and the previously scheduled December 2019 execution, pursuant to 28 C.F.R. § 26.4, a federal regulation that

---

[3] Crime victims, for instance, have extensive rights to participate in the underlying criminal proceedings.  *See* 18 U.S.C. § 3771.

6

Defendants have remarkably claimed is "plainly intended for the condemned inmate's benefit," even though the regulation sets forth members of the inmate's adversary who "shall be present." Def.'s Opp. to Mot. for Leave to Intervene at 8, No. 20-cv-336-JMS-DLP, Dkt. No. 51; *see, e.g.,* § 26.4(c) ("In addition to the Marshal and Warden, the following persons shall be present at the execution: (1) Necessary personnel selected by the Marshal and Warden; (2) Those attorneys of the Department of Justice whom the Attorney General determines are necessary.").

And while the statute and regulation do not directly mandate that crime victims be invited to witness the execution, the Federal Bureau of Prisons' Execution Protocol makes this requirement clear. That protocol sets forth precisely who the "eight citizen" witnesses provided for in the regulation are intended to be: "in identifying these [eight citizen] individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the inmate was prosecuted to recommend up to *eight individuals who are victims or victim family members to be witnesses of the execution*)." *See* Exh. A to the Complaint ("BOP Protocol"), Ch. 1, III.G.1.c.(1), 10-11; *see also* Complaint, ¶101.

Plaintiffs have now been selected twice to be one of the few citizens who "shall be present," *see* § 26.4(c)(4)(i), and their selection is more than sufficient to bring them *arguably* within the zone of interests for the purposes of an APA challenge. Defendants therefore cannot demonstrate that are "so marginally related or inconsistent with the purposes" of the statute as to overcome the presumption of judicial review.

Moreover, the stance taken in this litigation by the Defendants is a full turn from what has come before. From the moment they announced these executions – first in July of last year and then on June 15 just weeks ago – they relied on the role of the victims. Their press release announced the Government "owed it to the victims . . . and the families left behind" to set these

dates.[4]  Throughout its litigation in the last six months opposing Daniel Lee's motions, the

Department again and again has cited the victims and their need to move forward.[5]  Defendants

have clearly always seen the victims as playing a significant role in their case.

> ### C.     Defendants' Decision was Arbitrary and Capricious, and Not in Accordance With Law.

"An agency decision will be found 'arbitrary and capricious' if it 'relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise.'" *Boucher v. United States Dep't of Agric.*, 934 F.3d 530, 547 (7th Cir. 2019).

Plaintiffs have a far "better than negligible" chance of showing that Defendants' decision

here was arbitrary and capricious. Defendants state that its reasons for moving forward with the

execution are "self-evident," Defs' Opp. at 13, but in fact they have failed to offer any reason

why the execution must take place three days from now.  Defendants have Mr. Lee in custody.

If they do not execute him next week, they will have the chance to execute him next month, or

next year.  The date of Monday, July 13 has no significance to BOP, Mr. Lee, or the victims.  On

the other hand, there are abundant circumstances showing that Defendants failed to consider the

consequences of scheduling this execution in the midst of the most devastating global pandemic

---

[4]  *See* n.1, *supra*.

[5]   The Government has referenced the interests of the victims' family members in at least eleven pleadings throughout the course of litigation. *See, e.g.  Lee v. Watson*, Case No. 19-3399 (7th Cir.) Doc. #3, Filed 12/06/2019, at p. 26 (arguing that the both the government *and* the victims of crime have important interests at stake); *In re Federal Bureau of Prisons' Execution Protocol Cases*, Application for a Stay or Vacatur of the Injunction Issued by the United States District Court for the District of Columbia, No. 19A-615 at p. 4 (S. Ct. December 2, 2019). (Government asserted it was "[a]cting on behalf of the public and the victims. . ..").

in the past century.  Defendants' decision not only puts Plaintiffs at risk of a potentially fatal illness, it imposes the same grave risk on everyone Plaintiffs come into contact with, including the health care workers who routinely care for Ms. Peterson. The safety measures they have purportedly offered are last-minute patches designed to cover for their lack of preparation.

These measures are wholly insufficient to protect Plaintiffs, particularly in light of Plaintiffs' serious medical conditions, which exacerbate the risk posed by the pandemic. The declaration of Mr. Winter does not absolve Defendants' argument of its deficiencies. To take just one example, Mr. Winter asserts that FCC Terre Haute staff are required to undergo daily temperature checks and symptom screenings. *See, e.g,* Defendants' Opposition to Plaintiffs' Motion to Intervene, *Hartkemeyer, et al. v. Barr, et al.*, 2:20-cv-0036-JMS-DLP, Doc. 50-1, at ¶8 (S.D. Ind. July 8, 2020). However, he specifies no similar measures that will be taken with regard to the many others who will be present for Mr. Lee's execution. More astonishingly, in *Hartkemeyer* he admits pointedly that "BOP has no plans to conduct COVID testing on individuals involved in the execution in advance of the execution." *See, e.g,* Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, *Hartkemeyer, et al. v. Barr, et al.*, 2:20-cv-0036-JMS-DLP, Doc. 33-1, at ¶7 (S.D. Ind. July 8, 2020).

Without comprehensive testing, screenings on a mere subset of individuals who will be present will be wholly ineffective in identifying any participants who are infected with COVID-19 but are asymptomatic, which the CDC estimates to amount to 35 percent of all infections. Further, Defendants have not even attempted to reconcile the fact that BOP continues to suspend all visitation, including legal visits, at the entire FCC Terre Haute complex due to the dangers of COVID-19, but is now attempting to proceed with an event requiring an influx of people all at one time traveling from all over the country. Since March 2020, when BOP first suspended

9

visitation bureau-wide, the death toll from COVID-19 has significantly increased across the country; FCC Terre Haute is currently experiencing a known outbreak of the virus; and the country is now in the midst of another surge in infections that has caused numerous states to backtrack on or pause their reopenings due to the grave risk of virus spread. And as Defendants frankly acknowledge, they have no control over Plaintiffs' travel arrangements.  Def. Opp. at 6. But Plaintiffs obviously cannot attend the execution without traveling, and travel itself poses significant risks. It is the definition of arbitrary for Defendants to insist on a random date of execution that so clearly poses entirely unnecessary risks both on Plaintiffs and the broader public.

Finally, Defendants' argument that they have complied with the law is based on willful blindness to Plaintiffs' right to attend Mr. Lee's execution. The relevant regulation, 28 C.F.R. §26.4, states that witnesses "shall be present" and, as noted, pursuant to its own protocol, the Federal Bureau of Prisons selected Plaintiffs as witnesses. Scheduling Mr. Lee's execution is "not in accordance with law" because it deprives Plaintiffs' of their right to be present at the execution, a right that the BOP itself granted.

## IV.    THE BALANCE OF EQUITIES IN THIS CASE ARE FIRMLY ON THE PLAINTIFFS' SIDE.

The balance of equities in this case are firmly on the Plaintiffs' side. The irreparable harm to them is, in fact, irreversible—if Mr. Lee's execution goes forward in the midst of this pandemic, they will effectively and completely be denied their right to be present. It is the Plaintiffs, not the Government, who have had to go through the ordeal of the many communications with BOP personnel—about travel arrangements, lodging, and the other logistical minutiae of the execution—to preserve their interest in ensuring they are there. It is the Plaintiffs, not the Government, who have carried with them the pain of their losses. It is the

10

Plaintiffs who seek peace in this long, difficult tragedy, and some sense of closure through being present at the execution, not the Government. Defendants have, over and over again, publicly claimed to be rushing this execution forward in their names, but their positions taken here, expose that lie.

Perhaps in an effort to denigrate their interests, Defendants make several unfortunate references to the Plaintiffs themselves. Mrs. Earlene Peterson is not an "extended family member" of the victims, Dkt. 10 at 3: She is their *mother* and *grandmother*. No legal argument can obscure the loss to a parent of her child. One can travel anywhere in the world and ask any person from any culture what the strongest bond is that exists between any two people, and get the same answer: that between mother and child. A mother carries her child, nourishes her child, bathes her, reads to her, helps her pick out an outfit for the first day of school, laughs when she laughs, cries when she cries, hurts when she hurts.  And a mother bursts with love and pride when her daughter gives birth to a child – her grandchild. Plaintiff Kimma Gurel is Nancy Mueller's *sister*, Sarah Elizabeth's *aunt.* Nancy Mueller was Plaintiff Monica Veillette's *aunt*, and Sarah Elizabeth, her *first cousin.* Nor should Mrs. Peterson's daughter, granddaughter and son-in-law be called in this litigation "an" Arkansas family, or "an" eight-year-old girl. Dkt. 10 at 3, 20. They may be merely that to the federal government, but to Plaintiffs they were, and remain, their family.

Defendants have invoked the inconvenience to them of foregoing the currently scheduled execution, noting for example "the tremendous planning" involved in carrying out an execution. *See, e.g,* Defendants' Opposition to Plaintiffs' Motion to Intervene, *Hartkemeyer, et al. v. Barr, et al.*, 2:20-cv-0036-JMS-DLP, Doc. 51, p. 4 (S.D. Ind. July 8, 2020). But that interest, and the Defendants' cavalier treatment of the Plaintiffs' interest in this matter, is a far cry from its

reliance on their concerns when useful elsewhere. As noted, the Attorney General announced publicly that he was setting Mr. Lee's and the other execution dates because "We owe it to the victims of these horrific crimes, and to the families left behind." *See supra* n.1. And, as noted, the Department has invoked the Plaintiffs' interests throughout Mr. Lee's litigation—at least eleven times—in opposing his requested relief. *See supra* n.5. It should not now treat these family members – who attended the trial regularly, who testified for the prosecution when asked, who have been updated regularly over the years by the government about this case – as insignificant or underserving of respect.

Defendants' argument as to "interest in the timely enforcement of criminal sentences" fails to withstand any scrutiny under the facts of this case, including their delay of years in designing an execution protocol, and their failure to explain how any such interest would be thwarted by waiting until the pandemic has subsided or the health risks have otherwise abated.

The balance of harms in this case tips in Plaintiffs' favor.

**III.    The Requested Preliminary Injunction Would Further The Public Interest.**

It is in the public interest for "the families left behind," including Plaintiffs, to be able to see Mr. Lee's case through to the end, and to allow the surviving family members of victims to realize their interest in being present for the execution. It is also, indisputably, in the public interest not to send travelers to a prison, where the virus is known to quickly proliferate, and then back out into airports and hotels and their home communities and their families. Delaying Mr. Lee's execution until a time when the perils of the COVID-19 pandemic have abated will not only protect those interests, it will also prevent grave, potentially fatal, health consequences to the Plaintiffs, family members in their care, and the general public.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that their Motion for Preliminary Injunction be granted.

Respectfully submitted,


/s/ H. Baker Kurrus
H. Baker Kurrus
H. Baker Kurrus, PLLC
10816 Crestdale Lane
Little Rock, AR 72212
Phone: (501) 831-0325
Email:  Bkurrus@aol.com
Arkansas Bar No. 80082
*Attorney for Plaintiffs*


Dated: July 9, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 9, 2020, this [Proposed] Preliminary Injunction Order was filed electronically using the Court's CM/ECF system.

Respectfully submitted,


<u>/s/ H. Baker Kurrus</u>
H. Baker Kurrus
H. Baker Kurrus, PLLC
10816 Crestdale Lane
Little Rock, AR 72212
Phone: (501) 831-0325
Email:  Bkurrus@aol.com
Arkansas Bar No. 80082
*Attorney for Plaintiffs*


Dated: July 9, 2020