UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| EARLENE PETERSON )<br>KIMMA GUREL )<br>MONICA VIELLETTE )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>WILLIAM P. BARR, in his official )<br>capacity as the Attorney General of the )<br>United States; MICHAEL CARVAJAL, in )<br>his official capacity as the Director of the )<br>Federal Bureau of Prisons; and T.J. )<br>WATSON, in his official capacity as )<br>Complex Warden for Terre Haute Federal )<br>Correctional Complex, )<br> )<br>Defendants. )<br>) | Case No. 2:20-cv-00350-JMS-MJD |

**DEFENDANTS' AMENDED MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(c)(1) and consistent with Federal Rule of Appellate Procedure 8(a)(1), Defendants respectfully move for a stay pending appeal of this Court's Order, issued on July 10, see ECF No. 20 ("Order"), enjoining Defendants from proceeding with the executions of Plaintiff Daniel Lewis Lee scheduled for July 13, 2020, until further order of this Court. In support of this motion, Defendants attach the declaration of Rick Winter, which describes the harm to the Federal Bureau of Prisons ("BOP") and the stakeholders if the executions were to be postponed. In view of the fact that the first execution date is rapidly approaching, Defendants request that this Court rule on this motion by July 10, 2020. In any event, Defendants plan to seek relief in the Court of Appeals shortly hereafter.

Defendants recognize that this Court has determined that Plaintiffs meet the standard for issuance of a preliminary injunction, which is the same standard that applies to this motion. Federal Rule of Appellate Procedure 8(a)(1), however, requires Defendants to first move in this Court for a stay of the injunction pending appeal before seeking a stay in the Court of Appeals. Accordingly, for the reasons stated below and in Defendants' opposition brief to Plaintiffs' motion for a preliminary injunction, *see* ECF No. 10, Defendants respectfully request that the Court stay the injunction pending appeal. 28 C.F.R. § 0.20(b); 28 U.S.C. § 2107(b).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 62(c) provides in relevant part: "When an appeal is taken from an interlocutory or final judgment granting . . . an injunction, the court in its discretion may suspend . . . an injunction" during the pendency of the appeal. District courts considering a motion for such a stay consider the same factors as those governing a motion for a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Before seeking a stay from the Court of Appeals, a party must ordinarily move first in the District Court for an order suspending an injunction pending appeal. Fed. R. App. P. 8(a).

## ARGUMENT

**I.   DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL OF THIS COURT'S INJUNCTION**

Respectfully, Defendants disagree with the Court's rationale in finding that Plaintiffs have a likelihood of success on their arbitrary and capricious claim under the Administrative Procedure Act (APA). The Attorney General's decision to schedule Mr. Lee's execution was plainly an agency action committed to agency discretion by law, and is therefore unreviewable under the APA. *See* 5 U.S.C. § 701(a)(2). Furthermore, Plaintiffs are not within the "zone of interests" protected by the Federal Death Penalty Act ("FDPA"), or any relevant regulation. *See Am. Fed'n*

*of Gov't Empls., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). Finally, the Attorney General's decision was not arbitrary and capricious. Even aside from the compelling government interest in the timely enforcement of capital punishment, Department of Justice ("DOJ") regulations mandate that the BOP Director schedule executions promptly after the lifting of the stay of a previously scheduled execution. 28 C.F.R. § 26.3(a). BOP is acutely aware of the risks posed by the COVID-19 pandemic and has taken appropriate measures for all witnesses to the execution, including the Plaintiffs, to mitigate those risks while still performing its important duties.

The Court faults the Government for "appear[ing]" to give "no consideration to [Plaintiffs'] rights whatsoever." Order at 11. The Court's speculation is unfounded. Again, BOP was not required to relay all of its considerations concerning the setting of execution dates on the record, and the fact of the matter is that BOP did consider the victims' family's participation. The Court itself notes that BOP has agreed to provide them personal protective equipment, *id.*, that the Warden selected them as witnesses to attend the execution, *id.* at 1, and that a BOP staffer spoke with Plaintiffs (via Ms. Veillette) several times about their presence at the execution. *Id.* at 11. Indeed, the Protocol specifically contemplates victims' witnesses attending. BOP's execution protocol provides that the Warden will ask the relevant US Attorney "to recommend up to eight individuals who are victims or victim family members to be witnesses of the execution." BOP Protocol at 10–11. Similarly, the Court has no basis to fault BOP for "apparently [giving] no consideration to the requirement that closed-circuit viewing be made available for close relatives of the victim." Order at 11. BOP did consider CC-TV but determined it was unnecessary because the witness room holds eight witnesses and only three witnesses will be in the witness room (as they are the only ones who expressed an interest in viewing the execution). None of the witnesses or potential witnesses asked for CC-TV.

More importantly, for purposes of the APA review, it remains true that Plaintiffs have no legally enforceable right to attend the execution. The Court disagrees, finding that Arkansas law grants the victims' family members the right to be present for the execution and requires closed-

3

circuit viewing be made available for close relatives of the victim. But those provisions of the Arkansas law are not part of the "manner" of implementing the death sentence prescribed by state law. 18 U.S.C. § 3596(a). The controlling concurrence in the D.C. Circuit case this Court relies on pointed only to Ark. Code § 5-4-617 as the relevant "manner" incorporated by the FDPA. *See, e.g.*, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 133, 142 (D.C. Cir. 2020). And the provision of Arkansas law the district court invoked itself describes Ark. Code § 5-4-617 as establishing the "manner" of execution. *See* Ark. Code § 16-90-502(c). Indeed, even the dissenting judge in that case would not have extended the FDPA so far as the district court did here, explaining that in his view, the FDPA did not require the government to follow "every nuance" of a state procedure, but rather only "those procedures that effectuat[e] the death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." 955 F.3d at 151 (Tatel, J., dissenting) (quotation marks and citation omitted). As such, the FDPA does not require that BOP adhere to them and does not bring these plaintiffs within the FDPA's zone of interest.

Accordingly, Defendants respectfully submit that they are likely to succeed on this issue on appeal.

## II. THE BALANCE OF HARMS WEIGHS IN FAVOR OF ENTRY OF A STAY OF THE PRELIMINARY INJUNCTION

This Court held that the balance of harms weighs in favor of issuance of a preliminary injunction. Defendants respectfully disagree. The Supreme Court has repeatedly recognized the Government and the victims' compelling interest in the timely enforcement of a death sentence. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998); *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019) ("The people of Missouri, the surviving victims of [the condemned inmate's] crimes, and others like them deserve better. Even the principal dissent acknowledges that the long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive.") (citation omitted from parenthetical). This is particularly the case where, as here, the

execution date is set and the Government has mobilized its resources to carry out the lawful sentence.

As Mr. Winter explains in his declaration, each execution requires significant advanced planning and coordination, including the "activation of the execution team, which consists of over 40 BOP staff members," Declaration of Rick Winter, dated July 9, 2020, ("Winter Decl.") ¶ 5, the mobilization of approximately 200 BOP staff at the Federal Correctional Complex at Terre Haute ("FCC Terre Haute") to serve as institution security and support, *id.* ¶ 8, the synchronization of the schedules of BOP contractors who must set aside their own personal and work related matters for each execution, *id.* ¶ 6, the coordination of security measures with federal, state, and local law enforcement agencies, *id.* ¶ 7, the arrangement of travel and lodging for any victims' family members who have committed to witnessing the execution, *id.* ¶ 11, as well as the participation of approximately 50 additional BOP personnel from specialized teams, such as Special Operations Response Teams and Disturbance Control Teams, who will need to travel to FCC Terre Haute from other BOP institutions. These preparations cannot easily be undone; "[a]ny adjustment to the execution dates would require significant planning and coordination such as that which already has been undertaken by BOP to date." *Id.* ¶ 12. Accordingly, beyond the Government's strong interest in proceeding with the criminal judgment, operational considerations surrounding the planned executions lend further support in favor of a stay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay its injunction pending Defendants' appeal of this Court's July 10, 2020 Order enjoining Defendants from proceeding with the execution of Plaintiffs.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:    _s/ Shelese Woods_____
       Shelese Woods
       Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2020, the foregoing was filed electronically through

ECF/CM. On this same date, electronic service will be made to all counsel of record through the

Court's ECF/CM system.


s/ *Shelese Woods*
Shelese Woods
Assistant United States Attorney


Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333
(317) 226-6125 [Fax]