In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 20-2252

EARLENE BRANCH PETERSON,
KIMMA GUREL, and MONICA VEILLETTE,

                        *Plaintiffs-Appellees*,

*v.*

WILLIAM P. BARR, Attorney General
of the United States, MICHAEL CARVAJAL,
and T. J. WATSON, Warden,

                        *Defendants-Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:20-cv-00350-JMS-DLP — **Jane Magnus-Stinson**, *Chief Judge*.

_____

SUBMITTED JULY 11, 2020 — DECIDED JULY 12, 2020

_____

Before SYKES, *Chief Judge*, and EASTERBROOK and BARRETT, *Circuit Judges*.

SYKES, *Chief Judge*. In 1996 Daniel Lewis Lee murdered an Arkansas family of three in pursuit of funds to support the racketeering activities of a white supremacist organization. The crimes were particularly heinous. Lee and his codefend-

Case 2:20-cv-00350-JMS-DLP   Document 31-1   Filed 07/12/20   Page 2 of 10 PageID #: 337
Case: 20-2252   Document: 00713642717   Filed: 07/12/2020   Pages: 10

2                                                                No. 20-2252

ant were members of the Aryan Peoples' Republic, a white supremacist group that sought to establish an independent nation in the Pacific Northwest. In January 1996 they traveled from the State of Washington to the Arkansas home of firearms dealer William Mueller; his wife, Nancy; and their eight-year-old daughter Sarah. After stealing a cache of weapons and a large amount of cash and coins, they shot the three victims with a stun gun, duct taped plastic bags over their heads to asphyxiate them, weighed their bodies down with rocks, and threw them in a bayou. The bodies washed up in an Arkansas lake about six months later.

In 1999 a federal jury in the Eastern District of Arkansas convicted Lee of three counts of capital murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), and sentenced him to death. Now more than two decades later, Lee has exhausted all appeals, including multiple rounds of postconviction review, and is scheduled to be executed on Monday, July 13, 2020, at the United States Penitentiary in Terre Haute, Indiana. The execution was originally scheduled to take place on December 9, 2019, but was enjoined by two district judges, one in the Southern District of Indiana (where the prison is located) in connection with Lee's petition for habeas corpus under 28 U.S.C. § 2241, and another in the District of Columbia who was hearing a challenge to the federal execution protocol brought by Lee and other death-row inmates at the Terre Haute prison. We described this litigation history in our opinion two days ago affirming the Indiana judge's final order denying § 2241 relief. *Lee v. Watson*, No. 20-2128, slip op. at 3–6 (7th Cir. July 10, 2020). For present purposes, it's enough to say that on December 6, 2019, we vacated the stay in the § 2241 habeas proceeding, *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6,

No. 20-2252 3

2019), and the Court of Appeals for the District of Columbia Circuit vacated the injunction in the execution-protocol case on April 7, 2020, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). The Bureau of Prisons ("BOP") thereafter rescheduled Lee's execution for July 13, 2020, at 4 p.m. EDT.

On July 7, 2020, three family members of the victims filed a complaint in the Southern District of Indiana seeking to enjoin the BOP from carrying out Lee's execution. The plaintiffs—Earlene Peterson, age 81 (Nancy's mother); Kimma Gurel, age 61 (Nancy's sister); and Monica Veillette, age 43 (Nancy's niece)—want to attend the execution even though they oppose it. The Warden has authorized them to be witnesses, but they object to the BOP's decision to carry out the execution during the COVID-19 pandemic. They raise health concerns due to age, underlying medical conditions, the need to travel interstate to reach the Terre Haute prison, and the current degree of COVID-19 spread throughout the country. They seek to delay the execution until the pandemic is suppressed by widespread vaccination or effective treatment. The suit names the Attorney General, the BOP Director, and the Warden as defendants; we refer to them collectively as "the government." The plaintiffs allege that the agency's decision to schedule Lee's execution for July 13 failed to adequately account for the effect of the pandemic on their right to attend and thus is arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

Late in the day on Friday, July 10, a district judge in the Southern District of Indiana issued a preliminarily injunction enjoining the defendants "from carrying out the execution of

Daniel Lewis Lee on July 13, 2020, or on any future date, pending final resolution of the merits of this case or until further order of this [c]ourt." Order Granting Plaintiffs' Motion for Preliminary Injunction at 14, ECF. No. 20. The judge ruled that "the plaintiffs have shown a strong likelihood of prevailing on their claim that the defendants' setting of Mr. Lee's execution date without considering their right to be present was arbitrary and capricious and not in accord[ance] with [the] law." *Id.* at 11.

The government immediately appealed and sought a stay from the district court. That request was promptly denied. On Saturday morning, July 11, the government filed an emergency motion asking us to summarily stay or vacate the preliminary injunction. We ordered a response from the plaintiffs by 6 p.m. CDT. They complied. The government filed a reply late last night.

We vacate the preliminary injunction. The plaintiffs' APA claim lacks any arguable legal basis and is therefore frivolous.

First, the challenged agency action—setting a date for execution—may not be judicially reviewable *at all*. The APA does not permit judicial review of an action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 829–33 (1985). The government argues that scheduling an execution date is such an action. "When deciding whether a decision is committed to agency discretion, we first review the applicable statutes and regulations." *Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1072 (7th Cir. 2020). The object is "to see if they contain 'judicially manageable standards … for judging how and when an

Case 2:20-cv-00350-JMS-DLP   Document 31-1   Filed 07/12/20   Page 5 of 10 PageID #: 340
Case: 20-2252   Document: 00713642717   Filed: 07/12/2020   Pages: 10

No. 20-2252                                                                 5

agency should exercise its discretion.'" *Id.* (quoting *Chaney*, 470 U.S. at 830) (omission in original).

As relevant here, the Federal Death Penalty Act directs that "[a] person who has been sentenced to death" must be "committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence." 18 U.S.C. § 3596(a). It continues: "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States [M]arshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the [s]tate in which the sentence [was] imposed"—here, Arkansas. *Id.* (If the forum state does not have a death penalty, the Act directs the district court to designate another state. *Id.*)

The applicable regulations delegate broad discretion to the BOP Director to set execution dates:

> (a) Except to the extent a court orders otherwise, a sentence of death shall be executed:
>
> > (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner that 60 days from the entry of the judgment of death. If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director … when the stay is lifted.

28 C.F.R. § 26.3(a)(1).

Another regulation provides:

> Except to the extent a court orders otherwise:
>
> (a) The Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case the Warden shall notify the prisoner as soon as possible.

*Id.* § 26.4(a).

Perhaps the minimal constraints imposed by these regulatory requirements—the 60-day postjudgment waiting period and the 20-day notice to the prisoner—are enough to preclude a conclusion that the BOP Director's scheduling decisions are *entirely* unreviewable under § 701(a)(2). For example, if a prisoner sued for inadequate notice of an execution date, a court could review that decision. But if the BOP observes the minimal requirements in the regulations—as it did here—then it has the unconstrained discretion to choose a date for the execution.

The plaintiffs' claim is frivolous for another reason: they have no statutory or regulatory right to attend the execution. Judicial review under the APA is limited to persons who are "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Accordingly, a plaintiff must establish that "the injury he complains of … falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Air Courier Conference of Am. v. Am. Postal*

No. 20-2252 7

*Workers Union AFL-CIO*, 498 U.S. 517, 523–24 (1991) (quotation marks omitted).

The plaintiffs cannot satisfy this basic requirement. No federal statute or regulation gives them a right to attend Lee's execution. Needless to say, executions are not public proceedings. The Federal Death Penalty Act makes no mention of witnesses, whether members of the victims' family or others. In their complaint and motion for a preliminary injunction, the plaintiffs relied on the following regulation:

> (c) In addition to the Marshal and Warden, the following persons shall be present at the execution:
>
>> (1) Necessary personnel selected by the Marshal and Warden;
>>
>> (2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;
>>
>> (3) Not more than the following numbers of person[s] selected by the prisoner:
>>
>>> (i) One spiritual adviser;
>>>
>>> (ii) Two defense attorneys; and
>>>
>>> (iii) Three adult friends or relatives; and
>>
>> (4) Not more than the following numbers of persons *selected by the Warden*:
>>
>>> (i) Eight citizens; and
>>>
>>> (ii) Ten representatives of the press.

> (d) No other person shall be present at the execution, unless leave for such person's presence is granted by the Director of the Federal Bureau of Prisons. No person younger than 18 years of age shall witness the execution.

28 C.F.R. § 26.4(c)–(d) (emphasis added).

The plaintiffs argued below that subsection (c)(4)(i) of § 26.4 gives them a legally enforceable right to attend the execution. It does not. The regulation specifies who may be *permitted* by the Warden to attend an execution. It is a limitation on, not an entitlement to, witness attendance. It is not designed to protect the plaintiffs; the regulation does not even mention victims' family members. Nothing in the regulation gives the plaintiffs a right to require the BOP to schedule Lee's execution at a time when they are willing or able to attend. Nor does the regulation require their attendance before the execution may proceed.

Indeed, the district judge did not credit this argument. Instead, she developed her own theory of the case. Setting aside the impropriety of this maneuver, *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1582 (2020), the judge's theory is no more viable than the one raised by the plaintiffs.

Recall that the Federal Death Penalty Act provides that an execution shall be implemented "in the manner prescribed by the law of the [s]tate in which the sentence is imposed," § 3596(a)—again, Arkansas. Relying on the D.C. Circuit's decision in *Execution Protocol Cases*, the judge concluded that § 3596(a) incorporates Arkansas law governing execution witnesses—more specifically, section 16-90-

No. 20-2252 9

502(e)(1) of the Arkansas Code. That reasoning seriously misreads the D.C. Circuit's decision and federal law.

By its terms, § 3596(a) incorporates the forum state's law regarding the "manner" of implementing a death sentence. At issue in *Execution Protocol Cases* was whether this provision incorporates only "a [s]tate's choice among execution methods such as hanging, electrocution, or lethal injection," or whether it also requires the federal government to adhere to the "subsidiary details" of the state's chosen execution method. 955 F.3d at 108. The D.C. Circuit split three ways. Judge Katsas concluded that § 3596(a) incorporates only the "top-line choice among execution methods such as hanging, electrocution, or lethal injection." *Id.* at 113 (Katsas, J., concurring). Judge Rao interpreted the incorporation language more broadly to include the procedures governing the manner of execution formally established by state statute or regulation, but not informal protocols or procedures. *Id.* at 130 (Rao, J., concurring). As relevant here, Judge Rao identified section 5-4-617 of the Arkansas Code—the provision specifying the state's lethal-injection procedures—as the incorporated state law in Lee's case. *Id.* at 142. Judge Tatel dissented. He agreed with Judge Rao that § 3596(a) incorporates state procedures for effectuating death as contained in statutes and regulations. *Id.* at 146 (Tatel, J., dissenting). But he concluded that the statute also incorporates informal protocols if "issued by state prison officials pursuant to state law." *Id.*

Nothing in any of the separate opinions in *Execution Protocol Cases* supports the judge's conclusion that § 3596(a) incorporates the Arkansas Code provision governing execution witnesses. To the contrary, the debate among the D.C.

Case 2:20-cv-00350-JMS-DLP   Document 31-1   Filed 07/12/20   Page 10 of 10 PageID #: 345
Case: 20-2252   Document: 00713642717   Filed: 07/12/2020   Pages: 10

10                                                              No. 20-2252

Circuit judges was limited to state laws, regulations, and protocols governing *procedures for effectuating death*. Indeed, even the dissenting judge accepted that § 3596(a) does not require the BOP to follow "every nuance" of state execution procedure, but rather only "those procedures that effectuate the death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Id.* at 151 (alteration and citations omitted). Section 3596(a) cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure. We do not understand the word "manner" as used in § 3596(a) to refer to details such as witnesses. The word concerns how the sentence is carried out, not who watches.

In short, section 16-90-502(e)(1) of the Arkansas Code, the provision governing execution witnesses, is irrelevant here. The judge was wrong to insert it into this case.

INJUNCTION VACATED

CERTIFIED COPY
A True Copy
Teste:
Christina Duff Hodkins
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit